IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **YUMILICIOUS FRANCHISE, L.L.C.**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-4841-L** |
| | § | |
| **MATT BARRIE; KELLY GLYNN;** | § | |
| **BRIAN GLYNN; and WHY NOT, L.L.C.**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Yumilicious's Motion to Dismiss Counterclaims, for a More Definite

Statement, and to Strike (Doc. 8), filed January 8, 2014. This motion actually includes four separate

motions.  After carefully considering the motions, briefs, pleadings, and applicable law, the court

**grants in part and denies in part** Yumilicious's Motion to Dismiss Counterclaims and will allow

Defendants to replead those claims that the court determines do not fail as a matter of law; **denies**

**as moot** Yumilicious's Motion for a More Definite Statement; **grants** Yumilicious's Motion to

Strike Defendants' general denial but will allow Defendants to file an amended answer; and **denies**

**without prejudice** Yumilicious's Motion to Strike Defendants' jury demand.

## I.    Factual and Procedural Background

This action was brought on December 12, 2013, by Yumilicious Franchise, L.L.C.

("Plaintiff" or "Yumilicious") against Defendants Why Not, L.L.C ("Why Not"); Matt Barrie; Kelly

Glynn; and Brian Glynn[1] (collectively, "Defendants") for alleged breaches of two franchise

---

[1] The court refers to Matt Barrie, Kelly Glynn, and Brian Glynn herein collectively as "Individual Defendants."

**Memorandum Opinion and Order – Page 1**

agreements.  Yumilicious is a self-serve frozen yogurt franchise concept.  Yumilicious launched its first yogurt shop in 2008 in the Uptown neighborhood of Dallas, Texas.  Since that time, Yumilicious has expanded to thirteen locations in the Dallas-Fort Worth, Texas area.  In 2010, Why Not entered into two franchise agreements with Yumilicious to open two yogurt shops in South Carolina – one in the Forest Acres/Columbia area and one in Lexington.  The Individual Defendants, as principals of Why Not, entered into the Principals' Guaranty and Assumption Agreement ("Guaranty Agreement") wherein they personally guaranteed to Yumilicious that franchisee Why Not would pay in a timely fashion all of its obligations under the franchise agreements.

Yumilicious contends that Defendants breached the franchise agreement for the Columbia location by closing the yogurt store without prior authorization from Yumilicious.  Yumilicious further contends that Defendants breached the franchise agreements by failing to pay royalties and pay for yogurt products that they ordered.  Yumilicious seeks to recover damages that it allegedly sustained as a result of Defendants' breaches of the franchise agreements, including royalties and unpaid invoices for products and supplies.  Yumilicious also seeks attorney's fees under the Guaranty Agreement, as well as costs of suit, and prejudgment and postjudgment interest.

Defendants, on the other hand, maintain that the South Carolina yogurt shops were doomed from the beginning and that they had no option but to close the Columbia store because Why Not is unable to obtain proprietary Yumilicious-approved yogurt products at a reasonable price.  Defendants contend that Why Not was induced by Yumilicious's fraudulent statements regarding franchise costs and the national availability of products to enter the franchise agreements to open stores in South Carolina.  Defendants contend that, despite Yumilicious's false assurances to the contrary, Why Not was unable to obtain proprietary yogurt products at a reasonable price or the cost

at which Dallas area yogurt stores were able to obtain products because Yumilicious subsequently entered into a contract with a supplier in Dallas, Texas, that would not deliver products to South Carolina unless Why Not agreed to place large expensive pallet-sized orders.  Defendants contend that Why Not's only other option was to purchase products from other national suppliers (that were presumably approved by Yumilicious) at a cost that was 20 to 40 percent higher than that paid by Dallas stores.  Defendants have asserted counterclaims for breach of contract, fraud, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act ("DTPA").  Defendants seek actual, consequential, and incidental damages in excess of $1 million; punitive and treble damages; unspecified statutory relief under Texas's franchise laws; and attorney's fees.  In addition, or alternatively, Defendants seek to have the franchise agreements voided through a declaratory judgment action.

Yumilicious moved on January 8, 2014, to dismiss all of Defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6).  Alternatively, Yumilicious moves for a more definite statement and contends that Defendants should be required to replead their claims with more specificity.  Yumilicious also contends that Defendants' jury demand and general denial in response to its Original Complaint ("Complaint") should be stricken.

## II.    Plaintiff's Motion to Dismiss

### A.    Standard Applicable to Plaintiff's Motion to Dismiss

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.

2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*  (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In

this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise

some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).

### B.    Analysis

#### 1.    DTPA

Defendants' DTPA claim is based on alleged violations of the Federal Trade Commission's Franchise Rule ("FTC Act"), and the Business Opportunity Acts of Texas and South Carolina. Plaintiff contends that Defendants' DTPA claim is barred by the statute of limitations applicable to such claims.  Plaintiff asserts that while it is not entirely evident why Defendants believe that the disclosures by Plaintiff made in conjunction with the May 2010 franchise agreements violate the DTPA, Defendants' allegations make clear that any such claim is time-barred.  Defendants contend that Plaintiff's request for dismissal on this ground is not proper because it is based on the Columbia franchise agreement attached to Plaintiff's motion to dismiss, which is outside the pleadings.

DTPA claims are subject to a two-year statute of limitations. Tex. Bus. & Com. Code § 17.565 (Vernon 2011).  Contrary to Defendants' assertion, the Franchise Agreement attached to Plaintiff's motion to dismiss is considered part of the pleadings because it is referred to in Defendants' pleadings and is central to their counterclaims.  *See Collins*, 224 F.3d at 498-99. Moreover, as previously noted, a statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a party's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute.  *Jones*, 339 F.3d at 366.

With respect to their DTPA claim, Defendants allege Plaintiff violated the DTPA because it provided Defendants with a franchise disclosure agreement ("FDD") that was materially deficient. Defs.' Ans. & Countercl. ¶ 27.  Defendants contend that the FDD provided to them was deficient

because, among other things, it is dated June 8, 2008, but the Forest Acres franchise agreement is dated May 2010.  Defendants further assert that the FDD incorrectly states that Plaintiff provided earnings financial performance representations on April 19, 2010, six weeks before Defendants signed both franchise agreements.

Regardless of the date specified on the FDD, Defendants appear to acknowledge that they received the FDD in May 2010, which according to the franchise agreement submitted by Plaintiff, is the date when Defendants signed the franchise agreements.  Thus, the two-year statute of limitations for any DTPA claim based on alleged deficiencies in the FDD expired in May 2012, long before Plaintiff filed this action and Defendants asserted their counterclaims. Defendants' DTPA claim is therefore barred by the statute of limitations applicable to such claims and will be dismissed with prejudice.

### 2. Fraud and Negligent Misrepresentation

Plaintiff contends that Defendants' pleadings do not satisfy Rule 9(b)'s heightened pleading requirement and are insufficient to state claims for fraud and negligent representation.  Plaintiff further asserts that it is uncertain regarding the basis of Defendants' fraud and negligent misrepresentation claims.  Defendants respond and clarify that their fraud claim is based on the allegations in paragraph six of their pleadings which, according to Defendants, satisfy Rule 9(b)'s particularity requirement. Defendants do not specifically address Plaintiff's contentions regarding their negligent misrepresentation claim.

The parties acknowledge that Texas law applies to Defendants' contract and tort claims.  In Texas, the elements of common law fraud are: "(1) a material misrepresentation; (2) that was false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that

it should be acted upon by another party; (5) relied upon by another party[;] and (6) causing injury." *Flaherty & Crumrien Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009). The material misrepresentation element "can be met if the defendant concealed or failed to disclose a material fact when a duty to disclose existed." *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005).

Defendants' contend that they were induced by Plaintiff's false statements to enter into the franchise agreements and Guaranty Agreement. "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (footnote and citation omitted). Fraudulent inducement is a subcategory of fraud that arises in the context of contracts. *See id.* The elements of fraudulent inducement are the same as those for fraud, "plus an additional element that the fraud related to an agreement between the parties." *In re VNA Inc.*, 403 S.W.3d 483, 487 (Tex. App.–El Paso 2013, orig. proceeding) (citing *Haase*, 62 S.W.3d at 798-99). Thus, for a fraudulent inducement claim, the elements of fraud must be alleged as they relate to an agreement between the parties. *See id.*

To state a claim for negligent misrepresentation under Texas law, a plaintiff must allege that:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

Rule 9(b) "is an exception to Rule 8(a)'s simplified pleading" and requires a party "alleging fraud or mistake . . . [to] state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (internal citation omitted). "What constitutes 'particularity' will necessarily differ with the facts of each case." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). Rule 9(b)'s heightened pleading requirement applies to fraud and negligent misrepresentation claims when they are based on the same factual allegations. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). "Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." *Benchmark Elecs., Inc.*, 343 F.3d at 724 (citation and internal quotation marks omitted).

It is not entirely clear what factual allegations Defendants are relying on to support their negligent misrepresentation claim. To the extent Defendants intended to assert a claim for negligent misrepresentation based on the same factual allegations as their fraud claim, Rule 9(b)'s heightened pleading requirement applies to both claims. After reviewing Defendants' pleadings, the court concludes that paragraph six, when read in conjunction with paragraphs thirteen through twenty-two, is sufficiently specific at this stage to state claims based on fraud, fraudulent inducement, and negligent misrepresentation. The essence of these claims is that Plaintiff made false statements regarding franchise costs and products suppliers to induce Defendants into entering the franchise agreements and Guaranty Agreement and to open yogurt stores in South Carolina, and that Defendants relied on these statements to their detriment in deciding to enter the franchise agreements

and open stores in South Carolina.  According to Defendants' pleadings, the statements were made

by Yumilicious's CEO Salina Pham at various meetings that took place before May 2010 in

Yumilicious's Dallas offices.  The court will therefore deny Plaintiff's motion to dismiss with

respect to Defendants' fraud and negligent misrepresentation claims based on these allegations.

### 3.      Breach of Contract

Plaintiff contends that Defendants have failed to plead a valid contract claim because:

> with regard to damages, Why Not's Answer provides no explanation of the harm it
> allegedly suffered as a result of the breaches of the identified sections. For example,
> Why Not asserts that Yumilicious breached the agreement by failing to perform
> on-site evaluations or inspections. Answer ¶ 29(a)-(b). But Yumilicious cannot
> determine how such a breach, if it occurred, would have caused damages to Why
> Not. Likewise, Why Not complains of a lack of operational advice, *id.* ¶ 29(c), but
> offers no explanation as to how such a lack of advice caused Why Not damages. Why
> Not also asserts a breach of Paragraph VII.D ("Sourcing"), despite the fact that this
> paragraph in the Agreement does not impose any obligations on Yumilicious; the
> burdens of that section relate only to Why Not. *See* Franchise Agreement § VII.D
> (Ex. A, App. 15).
>
> Why Not's only actual mention of damages is entirely conclusory. Why Not
> states, without explanation, that "both stores were doomed to fail, and inevitably for
> Counter-Plaintiffs to lose their investments and put personal assets and the business
> relationships of other unrelated businesses at risk." Answer ¶ 29(d).  There is no
> explanation as to why Yumilicious's alleged breaches led to this result or why any
> such supposed harm was "inevitable." Why Not also states that "[t]here are numerous
> other . . . breaches of the franchise agreement," but does not even hint at what these
> other breaches might entail.

Pl.'s Mot. 13-14.

The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid

contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the

defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v.*

*Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).  As reflected above, Plaintiff's motion to dismiss focuses on whether Defendants have alleged sufficient facts to satisfy the damages element.

Defendants did not respond to Plaintiff's contentions or assert any arguments in support of their contract claim.  Defendants' pleadings state the following in conclusory fashion regarding their contract claim:

### Breach of the Franchise Agreement(s)

37.    All of the above constitutes breach of the franchise agreement(s) by [Yumilicious] hereby causing [Defendants] damages in an amount in excess of the minimum jurisdictional limits of this court.

Defs.' Ans. & Countercl. 8.  The only factual allegations that appear to support Defendants' breach of contract claim, based on the franchise agreements, are as follows:

### The Franchise Agreement(s)

29.    Representative breaches of the Franchise Agreement(s) by Yumilicious Franchisor include:

a.    Paragraph V.B. On Site Evaluation - none was provided for either store.

b.    Paragraph V.F. Inspections and On Site Evaluations - None were conducted.

c.    Paragraph V.H. Operational Advice - As examples: None was provided when critical assistance was requested for failing stores; wrong information was provided in operation of franchisor mandated equipment; no help was provided for inventory management and cash flow management in light of constraints imposed as a consequence of having a sole approved distributor for required product.

d.    Paragraph VII. Sourcing - The Franchisor has failed to provide approved suppliers capable of supplying Why Not with food and beverage items on a basis that allows the South Carolina stores to succeed. Instead both stores were doomed to fail, and inevitably for

> Counter-Plaintiffs to lose their investments and put personal assets
> and the business relationships of other unrelated businesses at risk.

*Id.* at 6-7.

It is unclear from Defendants' sparse pleadings why they believe that they suffered damages as a result of Plaintiff's alleged failure to conduct required site inspections and evaluations. Their contract claim based on these alleged breaches of the franchise agreements is therefore insufficient as pleaded.

With respect Defendants' allegations in paragraph 29(c), the Columbia franchise agreement requires Plaintiff as the franchisor to provide a number of services to assist franchisees. One such service is operational advice. Pl.'s App. 10. Section V.H., referred to by Defendants, provides in this regard: "Operational Advice. Advice and written materials concerning techniques for managing and operating Yumilicious Stores, including new developments and improvements in System equipments and System products." *Id.* The allegations in paragraph 29(c) of Defendants' Answer and Counterclaim regarding Plaintiff's alleged failure to provide operational advice are related to Defendants' contentions in paragraph 29(d) and other paragraphs of their pleadings that they lost their investment in the franchises and other personal assets because they were unable to obtain Yumilicious mandated proprietary products at a fair market price. According to Defendants' pleadings, the regional supplier approved by Yumilicious would not deliver products to Why Not in South Carolina unless it agreed to order and pay for large pallet-sized quantities of products. Defendants therefore allege that they had to obtain essential proprietary products from national suppliers at a much higher cost than that paid by the Dallas area franchises.

The sourcing section of the Columbia franchise agreement relied on by Defendants specifically requires franchisees to obtain products from Yumilicious-approved and designated suppliers.  This section also allows Yumilicious to designate itself as the sole approved supplier of products.  The franchise agreement permits franchisees to obtain products from alternate sources; however, any request in this regard must be submitted to Yumilicious in writing, and Yumilicious has absolute discretion to approve, deny, or revoke its prior approval of an alternative supplier.

Here, as best as the court can ascertain from Defendants' pleadings, Why Not could not financially afford to purchase pallet-sized quantities of products from the supplier approved and designated by Yumilicious, so it presumably obtained Yumilicious's approval to obtain products from another source, which was also prohibitively expensive.  The Columbia franchise agreement, however, does not require Yumilicious to provide Defendants with access to proprietary products at a low cost or fair market price; nor does it guarantee Defendants will earn a certain amount of profit as Yumilicious franchisees.  As a result, Defendants' damages could not have been caused by Plaintiff's alleged breaches of the franchise agreement(s) pertaining to product sourcing or advice regarding product sourcing.  Defendants' contract claim on this basis therefore fails as a matter law.  As Defendants did not respond to Plaintiff's contentions and motion to dismiss their contract claim, the court concludes that Defendants have abandoned or waived their contract claim.  Thus, rather than allow Defendants to amend their pleadings as to this claim, the court will grant Plaintiff's motion to dismiss with respect to Defendants' breach of contract claim based on the franchise agreements.

### 4.   Declaratory Judgment

Plaintiff contends that Defendants' request for a declaratory judgment fails because Defendants allege no factual basis to support their assertion that the franchise agreements at issue are null and void.  Plaintiff asserts that, without more, it has no way of understanding and responding to Defendants' bare allegations.

In Texas, "[a] contract induced by fraud is voidable, not void, and will be avoided only if the complaining party proves it has the right to avoid the contract." *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. of the Texas Dep't of Transp.*, 179 S.W.3d 589, 602 (Tex. App.—Austin 2005, pet. denied).  A party that is induced by fraud to enter into a contract may rescind the contract or sue for damages.  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 676-77 (Tex. 2000).  Rescission is an equitable remedy used to set aside a legally valid contract because of fraud, mistake, or for some other reason to avoid unjust enrichment. *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex. App.—Dallas 2004, pet. denied).  Rescission of a contract is a substitute for monetary damages when damages would not be adequate.  *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied).  Whether to grant rescission lies within the trial court's discretion.  *See Gentry v. Squires*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.).  To be entitled to rescission, Defendants would need to allege and ultimately prove that: "(1) [they] and the defrauding party [Yumilicious] are in the *status quo, i.e.,* that [they are] not retaining benefits received under the instrument[s] without restoration to [Yumilicious] or (2) there are equitable considerations that obviate the need for the parties to be in the *status quo*." *Shenandoah Assoc. v. J & K Prop., Inc.*, 741 S.W.2d 470, 475 (Tex. App.—Dallas 1987, writ denied) (emphasis in original and internal citations omitted).  "[A]n inability to return the parties to their former position should be considered in

determining whether rescission would be inequitable." *Gentry v. Squires Const., Inc.*, 188 S.W.3d at 410.

Plaintiff contends that the parties signed the May 2010 franchise agreements and have operated according to the terms of those agreements since that time.  Ratification is an affirmative defense that involves "the adoption or confirmation, by one with knowledge of all material facts, of a prior act *which did not then legally bind that person* and which that person had the *right to repudiate*." *City of The Colony v. North Texas Mun. Water Dist.*, 272 S.W.3d 699, 672 (Tex. App.—Fort Worth 2008, pet. denied)  (emphasis in original).  A party to a contract "ratifies an unauthorized act if, by word or conduct, with knowledge of all material facts, [it] confirms or recognizes the act as valid."  *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 342 (Tex. App.—Fort Worth 2003, pet. denied).  The court in *Miller* explained that ratification:

> may be inferred by a party's course of conduct and need not be shown by express word or deed. Ratification may also occur when a principal retains the benefits of a transaction after acquiring full knowledge of his agent's unauthorized act. The critical factor is the principal's knowledge of the transaction and his actions in light of such knowledge.

*Id.* at 342-43 (footnotes and citations omitted).  Whether a party has ratified a contract may be determined as a matter of law if the evidence is not controverted or is incontrovertible. *City of The Colony*, 272 S.W.3d at 732.

Defendants did not respond to Plaintiff's contentions regarding their request for declaratory judgment.  Defendants instead simply request to amend their pleadings if the court finds them to be deficient.  Whether Defendants, as Plaintiff contends, ratified the franchise agreements, cannot be determined based on Defendants' pleadings.  Dismissal based on Plaintiff's affirmative defense of ratification is therefore premature. Defendants' request to void the parties' agreements, however, is

not a valid basis for a declaratory judgment action. Accordingly, dismissal of Defendants'
declaratory judgment action on this ground is appropriate. The court will nevertheless allow
Defendants to replead their declaratory judgment action because the deficiency noted may be curable.
For the reasons explained, while an otherwise valid agreement is not void under Texas law,
Defendants may seek to avoid and rescind the franchise agreements and Guaranty Agreement if they
were induced by Plaintiff's alleged fraud to enter into the agreements, and they also allege sufficient
facts regarding their entitlement to rescission.

### C.      Amendment of Counterclaims

Defendants request to amend their pleadings with respect to their counterclaims in the event
the court determines that they have failed to state claims upon which relief can be granted.
Defendants have not previously amended their pleadings.  The court will therefore permit them to
amend their pleadings with respect to those counterclaims that the court has determined do not fail
as a matter of law, for which amendment would not be futile.  Specifically, the court will allow
Defendants to replead all of their counterclaims, except those based on breach of contract and alleged
violations of the DTPA, FTC Act, and Business Opportunity Acts of Texas and South Carolina.

### III.   Plaintiff's Motion to Strike General Denial

Plaintiff moves to strike Defendants' general denial for failure to comply with Federal Rule
of Civil Procedure 8(b). Defendants counter that Rule 8(b) does not require specific denials and
Plaintiff's Complaint violates Rule 10(b) by mixing several disparate allegations in each of the
numbered paragraphs.  Rule 8(b)(3) provides:

> A party that intends in good faith to deny all the allegations of a pleading—including
> the jurisdictional grounds—may do so by a general denial. A party that does not

intend to deny all the allegations must either specifically deny designated allegations
or generally deny all except those specifically admitted.

Fed. R. Civ. P. 8(b)(3).  Rule 8(b)(2) also requires a denial to "fairly respond to the substance of the allegation."  Fed. R. Civ. P. 8(b)(2).  Rule 10(b) requires a party to "states its claims or defenses in numbered paragraphs, each limited as far as practicable to a singe set of circumstances."  Fed. R. Civ. P. 10(b).

In their answer, Defendants generally deny all allegations in Plaintiff's Complaint except for those in paragraphs three through eleven, which Defendants admit. As framed, Defendants' general denial of the allegations in all paragraphs of the Complaint (except for those in paragraphs three through eleven) denies even such facts regarding the franchise agreements that form the basis of their own counterclaims.  Even if Defendants intend to deny certain allegations in the Complaint, Rule 8(b)(4) requires them to "admit the part that is true and deny the rest."  The court is aware that Defendants have taken the position that the franchise agreements and guarantees entered into between them and Plaintiff are void; however, this does not justify their general denial of all allegations in the Complaint except for those in paragraphs three through eleven.  Accordingly, Defendants' general denial of the allegations in these paragraphs is impermissible.  Moreover, the court determines that the Complaint satisfies Rule 10(b).  The court will therefore grant Yumilicious's Motion to Strike with respect to Defendants' general denial and **orders** Defendants to file an amended answer that complies with Rule 8(b)(3).

## IV.     Plaintiff's Motion to Strike Jury Demand

Based on language in the Columbia franchise agreement submitted in support of its motion to dismiss, Plaintiff contends that Defendants' jury demand should be stricken.  Defendants respond

that the Individual Defendants are not bound by the jury waiver in the franchise agreement(s) because they are not a party to them. Plaintiff replies that the jury waiver language in the Columbia franchise agreement encompasses any and all disputes arising out of the franchise agreement. Plaintiff further asserts that all three Individual Defendants signed the Guaranty Agreement, which is attached as Attachment A to the Columbia franchise agreement. Based on the following language in the Guaranty Agreement, Plaintiff maintains that the Individual Defendants are bound to the terms of the Columbia franchise agreement,[2] including the jury waiver language set forth in section XIX(M) of that agreement, which provides: "Each Guarantor also makes all of the covenants, representations, warranties and agreements of the Principals set forth in the Franchise Agreement and is obligated to perform thereunder, including, without limitations, under Sections VI., X., XIV., XV., XVIII., XIX.G., H., I., and K." Pl.'s Reply 9 (quoting Pl.'s App. 50). According to Plaintiff, sections XIX.G, H., I., and K of the Columbia franchise agreement contain the primary dispute resolution framework between the franchisor and franchisee and they immediately precede the jury waiver provision in section XIX(M). Plaintiff therefore contends that the jury waiver provision should be applied to all of Defendants' counterclaims, regardless of whether they are brought on behalf of the Individual Defendants. Plaintiff also notes that it is not clear from Defendants' pleadings whether the various counterclaims are brought on behalf of the Individual Defendants or Why Not.

The right to a jury trial under the Seventh Amendment to the Constitution may be waived by prior written agreement of the parties. *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 813

---

[2] It is unclear whether the Lexington franchise agreement contains the same waiver language because Plaintiff only provided a copy of the Columbia franchise agreement.

(N.D. Tex. 2002).  There is a presumption, however, against a waiver of the right to a jury trial.  *Id.* In determining whether there has been a waiver of the right to a jury trial, the federal standard for determining the validity of a contractual waiver of the right to a jury trial applies.  *Id.*  Under this standard, the issue is whether the waiver was made in a knowing, voluntary, and intelligent manner. *Id.*  As noted by the court in *RDO Financial Services Company*, the Fifth Circuit has not addressed who carries the burden of proof with respect to express contractual waiver but a majority of federal courts that have addressed the issue have concluded that such burden falls on the party seeking to enforce the waiver.  *Id.*  Based on the reasoning in *RDO Financial Services Company*, this court similarly concludes that the party seeking to enforce a waiver has the burden of establishing it. Plaintiff therefore has the burden as to this issue. Courts consider the following factors in determining whether a waiver was made knowingly, voluntarily, and intelligently: "(1) whether there was gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous." *Id.* at 813-14 (footnote omitted).

Here, the parties focus on the following waiver language in section XIX(M) of the Columbia franchise agreement, which was entered into between Why Not as franchisee and Yumilicious as franchisor in May 2010:

> **M.     JURY WAIVER. FRANCHISOR AND FRANCHISEE HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY RIGHT TO A JURY TRIAL IN ANY ACTION ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, THE RELATIONSHIP CREATED BY THIS AGREEMENT, OR ANY OTHER AGREEMENTS BETWEEN FRANCHISOR AND FRANCHISEE OR**

**FRANCHISOR'S AND FRANCHISEE'S RESPECTIVE AFFILIATES. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS WRITTEN CONSENT TO A TRIAL BY THE COURT.**

Pl.'s App. 42 (emphasis in original).  The words in this waiver provision are bolded and all letters are capitalized.  The waiver language is therefore conspicuous.  In addition to the foregoing waiver language, the Columbia franchise agreement provides that it is binding "upon Franchisor and Franchisee and their respective executors, administrators, heirs, beneficiaries, assigns and successors in interest."  Pl.'s App. 42.  Such language, however, is not bolded or capitalized and is not conspicuous, although it is set forth in a paragraph by itself.  The Guaranty Agreement's specific reference to some sections and paragraphs of the franchise agreement, but not the specific section and paragraph containing the jury waiver language, further undermines Plaintiff's waiver argument.

In any event, the remaining waiver factors are not addressed by Plaintiff. The court therefore concludes that Plaintiff has not met its burden of establishing that Defendants waived their right to a jury trial.  Moreover, because the remaining factors necessarily require the presentation of evidence, any analysis by the court of such factors is better left to summary judgment proceedings. The court will therefore deny without prejudice Yumilicious's Motion to Strike Defendants' jury demand.

## V.     Plaintiff's Motion for More Definite Statement

In light of the court's ruling as to Yumilicious's Motion to Dismiss Counterclaims, Yumilicious's Motion for a More Definite Statement is moot and will therefore be denied as moot.

## VI.     Conclusion

For the reasons stated, the court **grants in part and denies in part** Yumilicious's Motion to Dismiss Counterclaims but will allow Defendants to replead all of their counterclaims, except those based on breach of contract and alleged violations of the DTPA, FTC Act, and Business Opportunity Acts of Texas and South Carolina, which the court **dismisses with prejudice**.  In light of the court's ruling as to Yumilicious's Motion to Dismiss Counterclaims, the court **denies as moot** Yumilicious's Motion for a More Definite Statement. The court also **grants** Yumilicious's Motion to Strike Defendants' general denial but will allow Defendants to file an amended answer. Yumilicious's Motion to Strike Defendants' jury demand is  **denied without prejudice**.

Accordingly, the court **strikes** Defendants' answer and **orders** Defendants to file an amended answer and counterclaims by **August 28, 2014**, that cure the deficiencies herein noted.  *No new counterclaims may be asserted without leave of court.  Failure to file an amended answer and counterclaims by August 28, 2014, will result in dismissal of Defendants' counterclaims without prejudice pursuant to Federal Rule of Civil Procedure Rule 41(b) or with prejudice pursuant to Rule 12(b)(6).*

**It is so ordered** this 14th day of August, 2014.


Sam A. Lindsay
United States District Judge