IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **YUMILICIOUS FRANCHISE, L.L.C.**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-4841-L** |
| | § | |
| **MATT BARRIE; KELLY GLYNN;** | § | |
| **BRIAN GLYNN; and WHY NOT, L.L.C.**, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Counter-Plaintiff's Motion for Reconsideration of Previous Order and Motion to Amend (Doc. 26), filed October 17, 2014. After considering the motion, response, reply, pleadings, the court's August 14, 2014 memorandum opinion and order, and applicable law, the court **denies** Counter-Plaintiff's Motion for Reconsideration of Previous Order and Motion to Amend (Doc. 26).

**I. Background**

Rather than filing a separate motion for reconsideration, Defendants Matt Barrie, Kelly Glynn, Brian Glynn, and Why Not, L.L.C. (collectively, "Defendants" or "Why Not") embedded their motion for reconsideration and motion for leave in their October 17, 2014 response to Plaintiff Yumilicious Franchise, L.L.C.'s ("Plaintiff" or "Yumilicious") second motion to dismiss Defendants' counterclaims by asserting arguments that are randomly dispersed throughout their response to Plaintiff's motion to dismiss.[1] Consequently, Defendants' motion for reconsideration

---

[1] The document filed by Defendants is titled "Counter-Plaintiff's Response to Motion for Partial Dismissal of Counterclaims Under Rule 12(b)(6) and Pursuant to Court Order Motion for Reconsideration of Previous Order and

**Memorandum Opinion and Order 1**

is not a model of clarity. Defendants' response to Plaintiff's first motion to dismiss Defendants' counterclaims and Defendants' original pleadings in support of their counterclaims are similarly difficult to decipher.

Defendants request the court to reconsider its August 14, 2014 memorandum opinion and order (Doc. 17) in which the court dismissed with prejudice under Rule 12(b)(6) their counterclaims for alleged violations of the Texas Deceptive Trade Practices Act ("DTPA"), the Federal Trade Commission's Franchise Act or Franchise Rule ("FTCA" or "Franchise Rule"), and the Business Opportunity Acts of Texas and South Carolina.[2] The court previously dismissed these claims after

---

Motion for Leave to Amend and Authorities in Support Thereof." Doc. 26. Because Defendants' response to Plaintiff's second motion to dismiss included a motion for reconsideration, Defendants were required, but failed to include the requisite certificate of conference in their motion. *See* L.R. 7.1.

[2] In their motion for reconsideration, Defendants continue to treat their allegations regarding alleged violations of the Texas DTPA, the FTCA, and the Business and Opportunity Acts of Texas and South Carolina as separate and independent causes of action. While a cause of action can be brought under the DTPA for violations of the FTCA, there is no private right of action under the FTCA itself. *Brill v. Catfish Shaks of Am., Inc.*, 727 F. Supp. 1035, 1041 (E.D. La. 1989); *Texas Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 877 (Tex. App.—Corpus Christi 1988, writ denied) ("The DTPA itself provides in § 17.49(b) that: 'The provisions of this subchapter do apply to any act or practice prohibited . . . by a rule or regulation of the Federal Trade Commission.'").

Likewise, a violation of the TBOA is considered a "false, misleading, or deceptive act or practice under Section 17.46," and the TBOA provides that a "private right or remedy prescribed by Chapter 17 may be used to enforce" the TBOA. Tex. Bus. & Com. Code Ann. § 51.302 (West 2009). Contrary to Plaintiff's pleadings, however, the TBOA does not require franchisors to provide franchisees with FTCA disclosures or a financial disclosure document ("FDD") in accordance with the Franchise Rule. The TBOA instead requires sellers to file a disclosure document with the Texas Secretary of State that may be in the form of FTCA disclosures. *Id.* § 51.053. The TBOA also expressly prohibits the following conduct by sellers, which may form the basis of a DTPA claim:

(1) employ[ing] a representation, device, scheme, or artifice to deceive a purchaser;

(2) mak[ing] an untrue statement of a material fact or omit to state a material fact in connection with the documents and information required to be provided to the Secretary of State or purchaser;

(3) represent[ing] that the business opportunity provides or will provide income or earning potential unless the seller has documented data to substantiate the representation of income or earning potential, and discloses the data to the purchaser when the representation is made; or

(4) mak[ing] a claim or representation that is inconsistent with the information required to be disclosed in advertising or other promotional material, or an oral sales presentation, solicitation, or discussion between the seller and the purchaser.

**Memorandum Opinion and Order 2**

determining: (1) that Defendants' DTPA claim was based on alleged violations of the FTCA and the Business Opportunity Acts of Texas ("TBOA") and South Carolina ("SCBOA");[3] (2) that Defendants' DTPA claim was barred by the two-year statute of limitations applicable to DTPA claims; and (3) that Defendants' pleadings with respect to their DTPA claim failed to set forth or raise some basis for tolling the statute of limitations.

Defendants contend that the court erred in dismissing their DTPA, FTCA, and Business Opportunity Act claims on statute of limitations grounds. Defendants assert that they pleaded the discovery rule, which is sufficient to create a fact issue. Defendants also contend that section 16.069 of the Texas Civil Practice and Remedies Code applies to their counterclaims, and that, under this statute, their counterclaims for DTPA, FTCA, and Business Opportunity Act violations are not barred by the statute of limitations.

## II. Discussion

### A. Tolling Based on Discovery Rule

With respect to the discovery rule, Defendants direct the court to paragraph thirty-six of their original pleadings[4] in which they allege: "These fraudulent misrepresentations were ongoing until

---

*Id.* § 51.301. Accordingly, for these reasons, the court previously construed and continues to construe Defendants' counterclaim for alleged violations of the DTPA, FTCA, TBOA, and SCBOA, as a single claim under section 17.46 of the DTPA.

[3] Neither party has presented any authority to show that the SCBOA, like the TBOA, contains a similar provision that allows private parties to assert a deceptive trade practices act claim under South Carolina law. For this reason and because the parties previously acknowledged that Texas law applies to Defendants' claims, the court did not previously analyze Defendants' assertion of a claim under South Carolina law for alleged FTCA disclosure violations, and the court does not do so here.

[4] Defendants also cite to their amended pleadings in support of their motion for reconsideration; however, in ruling on the motion for reconsideration, the court only considers the pleadings in Defendants' original pleadings, which formed the basis for the first motion to dismiss and the court's ruling that is the subject of the motion for reconsideration.

**Memorandum Opinion and Order 3**

the failure of the Forest Acres store and could not, through reasonable diligence, have been discovered by [Defendants] until shortly before that time." Defs' Resp. to Mot. to Dismiss ¶ 16. Defendants contend that these allegations are sufficient to support tolling under the discovery rule. The court disagrees.

The discovery rule tolls a statute of limitations "until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Barker v. Eckman*, 213 S.W.3d 306, 311-12 (Tex. 2006). The discovery rule only applies to injuries that are "inherently undiscoverable and the injury itself must be objectively verifiable." *Id.* The discovery rule is a "plea in confession" or "matter in avoidance" to the statute of limitations. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988). The party relying on the discovery rule therefore has the burden of pleading and proof, and the failure to affirmatively plead the discovery rule waives the matter. *Id.* ("A matter in avoidance of the statute of limitations that is not raised affirmatively by the pleadings will, therefore, be deemed waived.").

The affirmative defenses expressly pleaded by Defendants do not reference the discovery rule at all. Even assuming that Defendants' pleadings are sufficient to satisfy the requirement that the discovery rule must be affirmatively pleaded, the court concludes that the pleadings are devoid of any facts to support their conclusory assertion that the alleged misrepresentations by Plaintiff continued for two years until the failure of the Forest Acres or Columbia store. According to Defendants' pleadings, all of the affirmative misrepresentations or omissions by Plaintiff occurred *before* Defendants signed the franchise agreements for both stores in May or June 2010. Moreover, Defendants concede that Plaintiffs ignored their repeated pleas for help before the Forest Acres store closed. Defs.' Counterclaim ¶ 21.

**Memorandum Opinion and Order 4**

While Defendants also allege that "the gravity of the distribution and supply issues was not immediately evident" because Yumilicious provided a four-month supply of essential proprietary products to Defendants before the Forest Acres store opened, they acknowledge that the reason their franchise business failed and was unable to compete financially with other yogurt shops is because Defendants were not permitted to purchase small quantities of products but instead, "*[f]rom inception . . .* [were required] to purchase Yumilicious product[s]" in cost prohibitive pallet-size, bulk quantities from Yumilicious's regional distributor. *Id.* ¶ 19. Thus, Defendants were aware from the beginning that this was an issue. Even though Defendants allege that Yumilicious assured them before entering the Lexington franchise agreement that it was in the process of negotiating a contract with a national distributor that would be able to provide products at a fair market price, there are no allegations by Defendants regarding any corresponding assurances by Yumilicious that the switch to a national distributor would obviate the requirement that purchases be made in bulk, pallet-size quantities. Accordingly, Defendants knew or reasonably should have known the facts giving rise to their DTPA claim based on this alleged misrepresentation long before the Forest Acres store failed and closed in October 2012. Defendants nevertheless waited until December 12, 2013, before filing this action. The discovery rule therefore does not save Defendants' counterclaim based on alleged violations of the DTPA.

### B. Section 16.069—Statute of Limitations for Counterclaims

On the other hand, the court agrees with Defendants that section 16.069 of the Texas Civil Practice and Remedies Code[5] applies to their DTPA counterclaim, and, under this statute, their

---

[5] Section 16.069 provides that if a counterclaim or cross claim is filed not later than thirty days after the date on which the party's answer is due and "arises out of the same transaction or occurrence that is the basis of an action," the claim is not barred by limitations "even though as a separate action it would be barred by limitation on the date the

DTPA claim is not barred by statute of limitations. After revisiting the grounds asserted in Plaintiff's first motion to dismiss, however, the court concludes that Defendants' DTPA claim fails for other reasons raised in Plaintiff's original motion to dismiss that the court did not previously address.

### C. Other Grounds Warranting Dismissal of Defendants' DTPA Claim

In their first motion to dismiss, Yumilicious argued that it was entitled to dismissal of Defendants' fraud and DTPA claims, which are based on the same factual allegations, because Defendants failed to allege any facts that, if proved, would establish that Yumilicious knew its representations were false when made or that it intentionally failed to disclose information to mislead Why Not. In addition, Yumilicious contended that Defendants failed to allege any facts that Why Not detrimentally relied on the allegedly false disclosures or omissions or that Yumilicious's alleged conduct caused Defendants to suffer damages.

Defendants did not specifically address this argument by Plaintiff in response to the motion to dismiss. Defendants instead simply responded that they had "alleged fraud with sufficient particularity" under Rule 9(b), and that they had "clearly alleged an action under the DTPA created by violation of the FTC Franchise Rule" by stating that:

> 25. The Texas Business Opportunity Act requires compliance with the FTC Franchise Rule in order to maintain an exemption and avoid a per se violation of the Texas Deceptive Trade Practices Act (DTPA), which provides for recovery of all damages including consequential damages and punitive damages which may be trebled under the DTPA, as well as recovering attorney's fees. Further, at the time of selling the initial franchise, Yumilicious was not in compliance with the South Carolina Business Opportunity Law.

Defs.' Resp. to Pl.'s Mot. to Dismiss ¶ 11 (Doc. 12).

---

party's answer is required." Tex. Civ. Prac. & Rem. Code Ann. § 16.069.

**Memorandum Opinion and Order 6**

As best as the court can ascertain, Defendants' DTPA claim is based on representations allegedly made by Yumilicious before and after the parties entered the Columbia franchise agreement and Yumilicious's alleged failure to provided certain disclosures under the Franchise Rule in accordance with the FTCA. With respect to Franchise Rule disclosures, Defendants allege that: (1) Plaintiff failed to provide updated disclosures or an updated FDD; (2) the FDD did not contain disclosures regarding approved vendors or distributors for required products; (3) the information disclosed by Plaintiff and included in the FDD underestimated the amount of start-up or build-out costs; and (4) the FDD that Plaintiff provided to Defendants before they signed the franchise agreements included some but not all of the financial performance information previously disclosed by Plaintiff.

Defendants further allege that before they signed either of the two franchise agreements, Yumilicious's chief executive officer Salina Pham made statements that "convinc[ed] them that Yumilicious could go national and supply products to stores outside Texas." Defs.' Counterclaim ¶ 6. Additionally, Defendants allege that Plaintiff provided "repeated assurance" that it was "in the process of negotiating a contract with a national distributor . . . who would be able to provide essential product[s] at a fair market price including shipping costs." *Id.* ¶¶ 15-16. Defendants allege that they relied on these assurances by Plaintiff in entering the franchise agreement for the second yogurt store location in Lexington, South Carolina. According to Defendants' pleadings, however, Yumilicious did not ultimately consummate the deal with the national distributor and instead "entered into an exclusive agreement with another regional distributor" in Texas. *Id.* ¶ 17.

Defendants' DTPA claim therefore falls under 17.46(b)(5) and 17.46(b)(24) of the DTPA. Section 17.46(b)(5) applies to affirmative representations by a seller to a consumer, whereas section

**Memorandum Opinion and Order 7**

17.46(b)(24) applies to omissions. *See* Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5), (24) (West 2011). Section 17.46(b)(5) prohibits a seller from representing "that goods or services have sponsorship, approval, characteristics, uses, benefits, or qualities which they do not have or that a person has a sponsorship, approval, status, affiliation or connection which he or it does not." *Id*. § 17.46(b)(5). Section 17.46(b)(24) applies to the failure "to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." *Id*. § 17.46(24). The failure to disclose facts by one who has no knowledge of those facts, however, is not a false, misleading, or deceptive act or practice and cannot serve as a basis for liability under the DTPA. *Robinson v. Preston Chrysler–Plymouth, Inc*., 633 S.W.2d 500, 502 (Tex. 1982). As explained by the Texas Supreme court in *Robinson v. Preston Chrysler–Plymouth, Incorporated*, when a seller makes representations to a buyer, the seller has a duty to know whether they are true, but no such duty exists when the seller does not make representations and merely fails to reveal information it does not know. *Id.* Thus, the failure to disclose facts about which the seller is unaware cannot give rise to liability under the DTPA.

Based on the court's reasoning in *Robinson*, the Fifth Circuit has similarly held that the section of the DTPA relied on by Defendants "requires [an] intentional omission of a material fact by a Seller for the purpose of duping the consumer." *Sidco Prod. M. Mktg., Inc. v. Gulf Oil Corp*., 858 F.2d 1095, 1100 (5th Cir. 1988). Thus, "[t]he seller must have known of the defect" or material information at the time of the transaction and "must have intended to deceive the consumer" by not disclosing the information. *Id.*; *Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890

**Memorandum Opinion and Order 8**

S.W.2d 118, 126 (Tex. App.—Texarkana 1994, writ denied ) (concluding that "[m]ere nondisclosure of material information is not enough to establish an actionable DTPA claim. By definition, the prohibition against failing to disclose material information requires a showing of intentional misconduct."). For DTPA claims under section 17.46, a consumer must have also relied to its detriment on the seller's acts or representations and such acts or representations must have been the producing cause of the consumer's damages. Tex. Bus. & Com. Ann. Code § 17.50(a).

### 1. Vendors or Distributors of Yogurt Products

Defendants' allegations regarding assurances and omissions as to vendors or distributors do not satisfy the foregoing requirements for DTPA claims under section 17.46. Defendants do not allege that Yumilicious's statements that it "*could go* national and supply products to stores outside Texas" and was in the process of negotiating a contract with a national distributor were knowingly false when made or intentionally omitted material information that made the statements misleading when made. Defs.' Counterclaim ¶ 6 (emphasis added). While such representations indicate that Yumilicious had the ability to go national and attempted to negotiate an agreement with a national distributor, they are not sufficiently definite to have the meaning that Defendants seem to attribute to them, which is that such statements constitute unqualified assurances by Yumilicious that it would go national and make yogurt products available to Defendants through a national distributor at a price lower than that charged by Yumilicious's regional distributor.

Additionally, Defendants do not expressly allege that they detrimentally relied on or were induced into entering the franchise agreements by the "could go national" representation or Yumilicious's failure to disclose distributor information, and, by alleging that these communications took place before the franchise agreements were entered, Defendants essentially acknowledge that

**Memorandum Opinion and Order 9**

they were aware of the alleged product supply issue before entering the agreements, and entered the agreements despite this knowledge. Defendants' allegations with respect to subsequent assurances that Plaintiff was in the process of negotiating a contract with a national distributer are likewise insufficient. Although Defendants allege that they detrimentally relied on and were induced by these assurances to enter the second franchise agreement, they acknowledge that they were aware from the beginning or "[f]rom inception" that they would only be able to make purchases of yogurt products in bulk pallet-sized quantities, and Defendants do not allege that Plaintiff told them that the switch to a national distributor would obviate this requirement. Defendants' allegations regarding alleged representations and omissions with respect to vendors or distributors and supply of yogurt products are therefore insufficient to state a claim upon which relief can be granted under section 17.46 of the DTPA.

### 2.    Start-Up Costs

With respect to start-up costs, Defendants allege as follows in paragraph 27(d) of their original pleadings:

> There were numerous difficulties in the buildout and fixturing of the first store as a result of mistakes made by the sole approved suppliers and approval processes [Yumilicious] required (e.g. architect) which resulted in buildout costs that were more than double the costs disclosed in Item 7 of the FDD and by [Yumilicious's] direct representation to [Defendant], Barrie. The estimated range grossly underestimated predictable startup costs which was a crippling financial blow, subsequently compounded by the exorbitant cost of proprietary products required by Yumilicious.

Defs.' Counterclaim ¶ 27(d). Again, Defendants do not allege that Plaintiff intentionally failed to disclose material information or that Plaintiff knew its disclosures regarding franchise start-up costs were false when made; nor do Defendants allege that they detrimentally relied on Plaintiff's

**Memorandum Opinion and Order 10**

disclosures regarding franchise costs in entering the franchise agreements. Further, Defendants concede that the unanticipated costs they incurred resulted in part from "mistakes" made by Plaintiff's suppliers rather than any intentional misrepresentations or omissions by Plaintiff. Defendants have therefore failed to state a claim upon which relief can be granted under 17.46 of the DTPA based on representations, omissions, or inaccurate disclosures pertaining to start-up costs.

### 3. Financial Performance

Regarding financial disclosures, Defendants allege:

> Contrary to the requirements of Item 19 of the FDD, [Defendants] were provided with earnings financial performance representations (FPRs) on several occasions, outside the four corners of the FDD, including on April 19, 2010, six weeks before the date they ostensibly signed both franchise agreements.

*Id.* ¶ 28. By this, Defendants appear to contend that Plaintiff violated the Franchise Rule by not including in the FDD all of the information previously provided to Defendants regarding Yumilicious's financial performance. Like the other alleged nondisclosures, Defendants do not allege that Yumilicious intentionally withheld material information or made any statements that it knew were false when they were made. Defendants also fail to allege that they detrimentally relied on any representations or omissions by Plaintiff regarding Yumilicious's financial performance or suffered damages as a result. Thus, at most, Defendants' allegations, if proved, would only establish a technical violation of the Franchise Rule, which alone is insufficient to state a claim under section 17.46 of the DTPA. Defendants have therefore failed to state a claim upon which relief can be granted under 17.46 of the DTPA based on representations or omissions as to Yumilicious's financial performance.

### 4. Updated Disclosures or FDD

Defendants acknowledge that they received an FDD before signing the franchise agreements in May or June 2010, but they allege that the FDD was not current or "updated" as required by the FTCA or Franchise Rule because it was dated June 8, 2008. In addition, Defendants allege that the numerous inconsistencies throughout the FDD "indicated a failure to provide a timely and complete updated FDD." Defendants' DTPA claim based on these allegations fails for the same reasons their claim with respect to financial performance and start-up disclosures fails. Without more, technical violations of the FTCA or Franchise Rule are insufficient to support a DTPA claim under 17.46 based on representations or omissions.

## III. Amendment

In conjunction with their motion for reconsideration, Defendants request that they be allowed to amend their pleadings to cure any defects identified by the court. The deadline for amendment of pleadings expired June 20, 2014. After Plaintiff filed its first motion to dismiss on January 8, 2014, Defendants, as a matter of course, could have amended their pleadings within 21 days under Rule 15(a) to cure the deficiencies noted in the motion to dismiss, but they elected not to do so.

Further, in responding to Plaintiff's motion to dismiss, Defendants did not address Plaintiff's contention that Defendants' original pleadings are woefully deficient of facts that, if proved, would show that: (1) the alleged representations or omissions by Plaintiff were intentionally and knowingly false or misleading when made; (2) that Defendants relied to their detriment on any of alleged representations or omissions; and (3) that Defendants' alleged representations or omissions were the producing cause of their damages. Defendants have instead steadfastly maintained in various filings that a violation of the FTCA's disclosure rule is a per se violation of the DTPA and sufficient,

without more, to support a DTPA claim. Moreover, while Defendants requested in response to the motion to dismiss to amend their pleadings, they did not explain how they would cure the deficiencies noted in Plaintiff's motion if allowed to replead. Likewise, in their motion for reconsideration, Defendants continue to maintain that their original pleadings with respect to their DTPA claim are sufficient and request that they be allowed to simply "re-state their FTC, DTPA, TBOC and South Carolina claims" as originally pleaded.

Defendants also waited two months after the court dismissed their DTPA claim before seeking reconsideration of the court's decision, and they only sought reconsideration after Plaintiff moved to dismiss their amended counterclaims. The court therefore concludes that Defendants have not acted diligently, that they have pleaded their best case, and that granting them leave to amend their DTPA claim would unnecessarily delay the resolution and trial of this case, which is currently set on the court's four-week docket beginning June 1, 2015. Defendants' request to amend their pleadings with respect to their DTPA claim is therefore **denied.**

## IV.    Conclusion

For the reasons explained, the court concludes that while its dismissal of Defendants' counterclaim under the DTPA on August 14, 2014, was not appropriate on statute of limitations grounds, their DTPA claim fails for other reasons raised in Plaintiff's original motion to dismiss, and any attempts at further amendment would therefore unnecessarily delay the resolution and trial of this case. Accordingly the court **denies** Counter-Plaintiff's Motion for Reconsideration of Previous Order and Motion to Amend (Doc. 26).

**Memorandum Opinion and Order 13**

**It is so ordered** this 22nd day of April, 2015.

                                          Sam A. Lindsay
                                          United States District Judge

**Memorandum Opinion and Order 14**