IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **YUMILICIOUS FRANCHISE, L.L.C.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-4841-L** |
| | § | |
| **MATT BARRIE, KELLY GLYNN,** | § | |
| **BRIAN GLYNN, and WHY NOT, L.L.C.,** | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are: Plaintiff Yumilicious's Motion for Partial Dismissal of Counterclaims under Rule 12(b)(6) and Pursuant to Court Order, filed September 17, 2014 (Doc. 19); and Plaintiff Yumilicious's Motion for Partial Summary Judgment, filed February 17, 2015 (Doc. 35). After carefully considering the motions, responses, replies, pleadings, record, and applicable law, the court **denies as moot** Plaintiff Yumilicious's Motion for Partial Dismissal of Counterclaims under Rule 12(b)(6) and Pursuant to Court Order, and **grants** Yumilicious's Motion for Partial Summary Judgment.

## I.    Factual Background and Procedural History

The court has addressed this lawsuit in a prior opinion and need not repeat the background facts and procedural history in detail.[1]   In brief, this lawsuit arises from a failed franchise relationship between Plaintiff-Counterdefendant Yumilicious Franchise, L.L.C. ("Yumilicious") and Defendants-Counterplaintiffs Why Not, L.L.C. ("Why Not"), and its principals Matt Barrie, Kelly

---

[1] *See* August 14, 2014 Memorandum Opinion and Order (Doc 17).

Glynn, and Brian Glynn (collectively, "Defendants").   Why Not entered into two franchise agreements with Yumilicious that granted it the right to operate two self-serve frozen yogurt stores in South Carolina in exchange for royalty fees.   Matt Barrie, Kelly Glynn, and Brian Glynn (the "Individual Defendants") executed personal guaranties for Why Not's obligations. After Why Not fell behind on payments due and closed one location without Yumilicious's consent, Yumilicious brought this lawsuit alleging that Defendants failed to comply with their contractual obligations. Yumilicious is seeking to recover damages for unpaid invoices, as well attorney's fees, costs, and prejudgment and postjudgment interest.   Defendants have counterclaimed and allege numerous problems with Yumilicious's performance under the franchise agreements.   In addition, Defendants allege that Yumilicious fraudulently induced them into entering into the agreements by making false statements regarding, among other things, franchise costs and product suppliers, upon which Defendants relied to their detriment in entering into the agreements and opening the South Carolina stores.   Defendants allege they lost their investment in the franchise and other personal assets because of their inability to obtain Yumilicious's proprietary products at a fair market price. Defendants further allege that the   franchise agreements and franchise disclosure documents contained misrepresentations and omissions upon which they relied to their detriment.

Yumilicious now moves for: (i) summary judgment on its affirmative claims for breach of contract and attorney's fees; and (ii) partial summary judgment on Defendants' counterclaims for fraud, negligent misrepresentation, fraudulent inducement, consequential and punitive damages, and

attorney's fees.[2]  Yumilicious's Motion for Partial Summary Judgment has been fully briefed and is ripe for adjudication.

The court now sets forth the summary judgment evidence, viewed in the light most favorable to Defendants, as the nonmovants, and draws all reasonable inferences in their favor.  *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

Yumilicious is a franchisor of frozen yogurt stores. Pl.'s & Counterdef.'s Orig. Ans. to First Am. Countercl. ¶ 1 (Doc. 22). Yumilicious and Why Not are parties to two Yumilicious Franchise Agreements ("Franchise Agreements"), both dated June 1, 2010.  Pl.'s App. 35-98, 109-70. Pursuant to the Franchise Agreements, Yumilicious authorized Why Not to use its trademarks, service marks, and proprietary system in connection with its operation of two South Carolina stores, one in Forest Acres, South Carolina (the "Columbia Location") and the other in Lexington, South Carolina (the "Lexington Location").  *Id.*[3]  The Franchise Agreements also required Why Not to make recurrent payments to Yumilicious for royalties, advertising, and other related fees.  Under the Franchise Agreements, Yumilicious was entitled to recover costs and attorney's fees for expenses incurred "in connection with Franchisee's failure to pay when due amounts owed to the Franchisor . . . or [failure to] otherwise comply with this Agreement[.]" *Id.* at 76 (Ex. B, Columbia Franchise Agreement § XIX.H); *id.* at 149 (Ex. D, Lexington Franchise Agreement § XIX.N).

---

[2] Defendants' Original Answer, Counterclaim, and Jury Demand (Doc. 5) included counterclaims for breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), the Federal Trade Commission Act, and the Texas and South Carolina Business Opportunities Acts, all of which the court has dismissed with prejudice. *See* Aug. 8, 2014 Mem. Op. & Ord. (Doc 17).  To the extent Defendants seek to raise claims and defenses based on these previously dismissed counterclaims, the court disregards these arguments.

[3] Although Why Not appears to question whether it executed a second Franchise Agreement for the Lexington Location, uncontroverted evidence shows that Why Not operated the Lexington Location as if the Franchise Agreement for the Columbia Location controlled. Pl.'s App. 15-29 (Ex. A, Depo. of Kelly Glynn at 191:25 - 205:1); *id.* at 103-04 (Ex. C, Depo. of Bryan Glynn at 154:23 - 155:2).  The Franchise Agreements are substantially similar, and the court considers them together.

**Memorandum Opinion and Order - Page 3**

Yumilicious also provided Defendants with a Franchise Disclosure Document, as required by the Federal Trade Commission.  Defs.' App. Ex. 2.

The Franchise Agreements deemed as overdue any payment not received on or before the due date, and provided that "[a]ll unpaid obligations under this Agreement shall bear interest from the date due until paid at the lesser of eighteen (18%) percent per annum, or the maximum rate allowable by applicable law."  Pl.'s App. 43 (Ex. B, Columbia Franchise Agreement § IV.C.(1)); *id.* at 116 (Ex. D, Lexington Franchise Agreement § IV.C.(1)).  On December 7, 2011, Matt Barrie executed an additional agreement on behalf of Why Not that set revised payment terms for amounts Why Not owed Yumilicious, including lowering the interest rate on sums due to ten percent (10%) under certain circumstances.  *Id.* at 184, 186-87 (Ex. F, Affidavit of Salina Pham ¶ 2 & Ex. 1); *id.* at 177-79 (Ex. E, Depo. of Matt Barrie at 176:21 - 178:12).

The Individual Defendants, as principals of Why Not, entered into the Principals' Guaranty and Assumption Agreement ("Guaranty Agreement"), wherein they personally guaranteed Why Not's obligations under the Franchise Agreements.  *Id.* at 30-31 (Ex. A, Depo. of Kelly Glynn at 211:17 - 212:1); *id.* at 101-03 (Ex. C, Depo. of Bryan Glynn at 152:4 - 155:2); *id.* at 173-74 (Ex. E, Depo. of Matt Barrie at 109:18 - 110:16); *id.* at 83-84 (Ex. B, Columbia Franchise Agreement at Attachment A); *id.* at 156-57 (Ex. D, Lexington Franchise Agreement at Attachment A).[4]

Both stores ultimately failed and closed.  Yumilicious performed under the Franchise Agreements, and Why Not breached the Franchise Agreements by, among other things, failing to

---

[4] The Guaranty Agreement states that the Guarantors "hereby personally and unconditionally guarantee[] to Franchisor . . . that Franchisee will punctually pay its obligations for initial franchise fees, royalties, advertising fund contributions, and purchases of equipment, materials, supplies, and other amounts due under the Agreement[]" and "render any payment or performance required under the Agreement upon demand if Franchisee fails or refuses punctually to do so."  Pl.'s App. at 83-84 (Ex. B, Columbia Franchise Agreement at Attachment A); *id.* at 156-57 (Ex. D, Lexington Franchise Agreement at Attachment A).

**Memorandum Opinion and Order - Page 4**

pay amounts owed for products shipped.  Pl.'s App. 13 (Ex. A, Depo. of Kelly Glynn at 187:14-24).

At the time Why Not closed the stores, it owed Yumilicious approximately $60,000 under the terms

of the Franchise Agreements for products that Yumilicious shipped to South Carolina.  *Id.* at 13-14

(Ex. A, Depo. of Kelly Glynn at 187:14 - 187:25).  As of March 4, 2015, Defendants owed

Yumilicious $81,194 for products delivered under the Franchise Agreements, including interest as

provided in the parties' agreements.  *Id.* at 185, 188-208 (Ex. F, Affidavit of Salina Pham ¶ 3 & Ex.

2).

## II.      Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Celotex*, 477 U.S. at 323-25; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458

(5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is

required to view all facts and inferences in the light most favorable to the nonmoving party and

resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402

F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh

the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods.,*

*Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the

nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

**Memorandum Opinion and Order - Page 6**

III.    **Analysis**

A.    **Yumilicious's Motion for Summary Judgment on its Affirmative Claims**

Yumilicious moves for summary judgment on its affirmative claims as follows:

•Why Not's liability for breach of contract associated with product and supplies that were not paid for;

•Damages for breach of contract associated with the product and supplies delivered to Why Not;

•Why Not's liability to Yumilicious for attorneys' fees pursuant to Chapter 38 of the Tex. Civ. Prac. & Rem. Code and terms of the relevant contracts; and

•Individual Defendants Matt Barrie's, Kelly Glynn's and Brian Glynn's liability under the Principal's Guaranty and Assumption Agreement.

Pl.'s Brief in Supp. of Mot. for Partial Summ J. 1.

In response, Defendants concede that they do not contest Yumilicious's affirmative claims.

*See* Defs.' Resp. to Mot. for Summ. J. ¶ 10 ("Counter-plaintiffs have never contested the validity

of [Yumilicious's] case-in-chief except as to [counter-plaintiffs'] affirmative defenses and

counterclaims.").  Based on the uncontroverted summary judgment evidence, Yumilicious has

established beyond peradventure that Why Not breached the Franchise Agreements and the

Individual Defendants are liable under the Guaranty Agreements.[5]  Pl.'s App. 13-14 (Ex. A, Depo.

of Kelly Glynn at 187:14 - 187:25).  Yumilicious has introduced unrefuted evidence that, as of

March 5, 2015, Why Not, and the Individual Defendants under the Guaranty Agreements, owe

Yumilicious the sum of $81,194, including interest, for delinquent payments due under the Franchise

Agreements.  *Id.* at 185, 188-208 (Ex. F, Affidavit of Salina Pham ¶ 3 & Ex. 2).  Yumilicious has

---

[5] The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted).

**Memorandum Opinion and Order - Page 7**

also demonstrated beyond peradventure that it is entitled to recover reasonable and necessary attorney's fees and costs from Why Not and the Individual Defendants under the Guaranty Agreements. *Id.* at 76, 83-84 (Ex. B, Columbia Franchise Agreement § XIX.H and Guaranty Agreement); *id.* at 149, 156-57 (Ex. D, Lexington Franchise Agreement § XIX.N and Guaranty Agreement).

In sum, based on the uncontroverted summary judgment evidence, Yumilicious's motion for summary judgment on its affirmative claims for breach of contract and attorney's fees will be granted.

### B.    Yumilicious's Motion for Partial Summary Judgment on Counterclaims

Yumilicious has also moved for partial summary judgment on Defendants' counterclaims for fraud, negligent misrepresentation, fraudulent inducement, consequential and punitive damages, and attorney's fees.[6]  The court considers these arguments in turn.

### 1.    Fraud, Negligent Misrepresentation, and Fraudulent Inducement

Yumilicious has moved for partial summary judgment on Defendants' counterclaims for fraud, negligent misrepresentation, and fraudulent inducement.  *See* Pl.'s Br. in Supp. of Mot. for Partial Summ J. 6-17.  Notably, Yumilicious has not moved for summary judgment on Defendants' counterclaim based on alleged misrepresentations or omissions in the Franchise Disclosure Document provided by Yumilicious.  *See, e.g.,* Reply Br. 2 ("Here, the Franchise Agreements allow Defendants to rely upon representations contained in the Franchise Disclosure Document related to its two South Carolina franchises."); *id.* at 10 ("Yumilicious's Motion for Partial Summary

---

[6] Although Yumilicious also moved for summary judgment on Defendants' civil conspiracy counterclaim, Defendants have abandoned this claim. *See* Resp. to Mot. for Partial Summ. J. ¶ 6 (Doc. 42). Thus, this counterclaim is no longer before the court.

Judgment should be granted and this case should be now focused solely on statements within the Franchise Disclosure Document.").

In support of its motion, Yumilicious argues that, to the extent based on alleged misrepresentations and omissions made *outside* the Franchise Disclosure Document it provided to Why Not, it is entitled to summary judgment because: (i) Defendants' fraud and negligent misrepresentation claims are barred by the economic loss doctrine,[7] and (ii) Defendants waived reliance on any representations made outside the Franchise Disclosure Document. Specifically with regard to alleged misrepresentations contained in the Franchise Agreements, Yumilicious also argues that these claims should be summarily adjudicated because Defendants have simply recast their previously dismissed breach of contract counterclaim as a fraud claim. Further, in its reply brief, Yumilicious points out that Defendants failed to file *any* summary judgment evidence to support their allegations that Yumilicious's Chief Executive Officer, Salina Pham, made misrepresentations that fraudulently induced them to enter into the Franchise Agreements and open two stores. As argued by Yumilicious: "The allegations, without support, have no value in the summary judgment context." Reply Br. 7. The court turns first to Yumilicious's arguments pertaining to alleged misrepresentations contained in the Franchise Agreements.

a.     *Alleged Misrepresentations in the Franchise Agreements*

Yumilicious argues that the reasoning in the court's August 14, 2014 decision dismissing Defendants' breach of contract counterclaim with prejudice (Doc. 17), requires summary adjudication of Defendants' nearly identical allegations recast in the amended counterclaim as fraud

---

[7] Yumilicious correctly notes that the economic loss doctrine does not apply to fraudulent inducement claims. *See* Pl.'s Br. in Supp. of Mot. for Partial Summ J. 10-11 (citing *Formosa Plastics Corp. v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998)).

and negligent misrepresentation. The court agrees and notes that Defendants did not respond to this

argument.  The amended counterclaim alleges:

### Misrepresentation in The Franchise Agreement(s)

> 46.    Fraudulent promises and statements were made in the Franchise Agreement(s) by Yumilicious Franchisor as follows:
>
>> a.    Paragraph V.B. **On Site Evaluation[s]** were promised but none was provided for either store.
>>
>> b.    Paragraph V.F. **Inspections** and On Site Evaluations were promised but none were conducted.
>>
>> c.    Paragraph V.H. **Operational Advice** was promised but none was provided when critical assistance was requested for failing stores; wrong information was provided in operation of franchisor mandated equipment; no help was provided for inventory management and cash flow management in light of constraints imposed as a consequence of having a sole approved distributor for required product.  All of these constitute fraudulent omissions and misrepresentations of fact.
>>
>> d.    Paragraph VII. Proper and economically viable **sourcing** was promised but the Franchisor failed to provide approved suppliers capable of supplying Why Not with food and beverage items on a basis that allows the stores to succeed. Instead both stores were doomed to fail, and inevitably for Counter-Plaintiffs to lose their investments and put personal assets and the business relationships of other unrelated businesses at risk.

Defs.' Am. Ans., Countercl. & Jury Demand ¶ 46(a)-(d) (Doc. 18) (emphasis added).

In its August 14, 2014 order dismissing Defendants' breach of contract counterclaim based

on nearly identical allegations, the court stated:

> The only factual allegations that appear to support Defendants' breach of contract claim, based on the franchise agreements, are as follows:

**The Franchise Agreement(s)**

29. Representative breaches of the Franchise Agreement(s) by Yumilicious Franchisor include:

    a.    Paragraph V.B. **On Site Evaluation** - none was provided for either store.

    b.    Paragraph V.F. **Inspections** and On Site Evaluations - None were conducted.

    c.    Paragraph V.H. **Operational Advice** - As examples: None was provided when critical assistance was requested for failing stores; wrong information was provided in operation of franchisor mandated equipment; no help was provided for inventory management and cash flow management in light of constraints imposed as a consequence of having a sole approved distributor for required product.

    d.    Paragraph VII. **Sourcing** - The Franchisor has failed to provide approved suppliers capable of supplying Why Not with food and beverage items on a basis that allows the South Carolina stores to succeed. Instead both stores were doomed to fail, and inevitably for Counter-Plaintiffs to lose their investments and put personal assets and the business relationships of other unrelated businesses at risk.

\* \* \*

**It is unclear from Defendants' sparse pleadings why they believe that they suffered damages as a result of Plaintiff's alleged failure to conduct required site inspections and evaluations. Their contract claim based on these alleged breaches of the franchise agreements is therefore insufficient as pleaded.**

August 14, 2014 Mem. Op. and Order 11-12 (Doc 17) (emphasis added).

Turning first to allegations concerning onsite evaluations and inspections, Defendants have simply taken their dismissed breach of contract counterclaim and recast it as a fraud and negligent misrepresentation counterclaim. *See* Defs.' Am. Ans., Countercl. & Jury Demand ¶ 46(a)-(d) (Doc.

18).  Fraud and negligent misrepresentation claims, like breach of contract claims, require that the alleged misrepresentations or omissions cause injury.  *See, e.g., Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (stating that fraud claim under Texas law requires that material misrepresentation cause injury); *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (citing *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)) (stating that negligent misrepresentation claim requires a plaintiff to show that it suffered pecuniary loss).  The court's reasoning in its order dismissing the breach of contract counterclaim (insufficient pleading of the essential element of damages), applies with equal force to the fraud and negligent misrepresentation counterclaims premised on identical allegations of failure to conduct on site evaluations or inspections.  Accordingly, there is no genuine dispute of material fact on the fraud and negligent misrepresentation claims, and Yumilicious is entitled to judgment as a matter of law on these claims based on paragraph 46(a)-(b) of the amended counterclaim.

With regard to operational advice and sourcing provisions, Defendants now allege that operational advice and sourcing provisions in the Franchise Agreements amount to fraud or negligent misrepresentation.  *See* Defs.' Am. Ans., Countercl. & Jury Demand ¶ 46(c)-(d) (Doc. 18).  In dismissing these same allegations when Defendants previously alleged them as a breach of contract counterclaim, the court held:

> The Columbia franchise agreement, however, does not require Yumilicious to provide Defendants with access to proprietary products at a low cost or fair market price; nor does it guarantee Defendants will earn a certain amount of profit as Yumilicious franchisees.  As a result, Defendants' damages could not have been caused by Plaintiff's alleged breaches of the franchise agreement(s) pertaining to product sourcing or advice regarding product sourcing.  Defendants' contract claim on this basis therefore fails as a matter law.

August 14, 2014 Mem. Op. and Order 13 (Doc 17).  The contract terms are not actionable under a fraud or negligent misrepresentation theory any more than they were under a contract theory.

Alternatively, the court agrees with Yumilicious that Defendants' fraud and negligent misrepresentation claims premised on the terms of the Franchise Agreements are barred by the economic loss doctrine.  Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract."  *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).  Thus, tort damages are generally not recoverable if a defendant's conduct "would give rise to liability only because it breaches the parties' agreement." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).  Tort damages are recoverable, however, if a defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties."  *Id.*  In *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986), a negligent supervision case, the Texas Supreme Court explained: "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* at 618; *DeLanney*, 809 S.W.2d at 494 ("When the only loss or damage is to the subject of the contract, the plaintiff's action is ordinarily on the contract.").

In this case, Defendants' fraud and negligent misrepresentation claims are tied directly to the Franchise Agreements and arise solely from the contractual relationship between the parties. Defendants have not shown that they suffered any loss independent of the Franchise Agreements. That Defendants' injuries can only be characterized as contractual is illustrated by the fact that, in the amended counterclaim, Defendants simply recast their previously dismissed breach of contract claim as a claim for fraud and negligent misrepresentation.  *Compare* Defs.' Am. Ans., Countercl.

& Jury Demand ¶ 46(a)-(d) (Doc. 18) *with* Defs.' Orig. Ans., Countercl. & Jury Demand ¶ 29(a)-(d) (Doc. 5).[8]

In sum, the court grants judgment as a matter of law in Yumilicious's favor on Defendants' claims of fraud and negligent misrepresentation based on terms within the Franchise Agreements for the same reasons it previously dismissed with prejudice Defendants' breach of contract counterclaim based on these same allegations. *See* August 14, 2014 Mem. Op. and Order 11-12 (Doc 17). Alternatively, Yumilicious is entitled to judgment as a matter of law on these counterclaims based on the economic loss doctrine. In light of its ruling, the court need not consider Yumilicious's alternative argument that Defendants disclaimed any reliance on representations outside the Franchise Disclosure Document.

The court now turns to Yumilicious's arguments pertaining to alleged misrepresentations made by Salina Pham, Chief Executive Officer of Yumilicious.

> b.    *Misrepresentations of Salina Pham*

Defendants' fraud-based counterclaims are based in large part on a number of alleged statements by Salina Pham, Yumilicious's CEO, including that she could supply the customized and proprietary components of Yumilicious's yogurt to the two South Carolina franchise locations at the same price Yumilicious sold these proprietary components to Texas franchisees. *See* Defs.' Am. Ans., Countercl. & Jury Demand ¶ 28 (Doc. 18). According to Defendants, these representations, as well as others, were false, and Defendants relied upon these statements to their detriment.

---

[8] The economic loss doctrine, however, does not bar Defendants' fraud and negligent misrepresentation claims related to representations and omissions in the Franchise Disclosure Document, as these alleged injuries preceded the contractual relationship, and do not arise solely from the parties' contractual relationship.

In response to Yumilicious's motion for partial summary judgment concerning alleged misrepresentation made by Salina Pham, Defendants have failed to provide the court with any evidence to support their allegations that Salina Pham made any representations, either prior to the parties entering into the Franchise Agreements, or during the term of the Franchise Agreements. Absent deposition testimony, affidavits, declarations, or other summary judgment-type evidence, the court is only left with allegations, which have no import at the summary judgment phase of the proceeding. *See* Fed. R. Civ. P. 56(c). Accordingly, the court concludes that Yumilicious is entitled to judgment as a matter of law with regard to fraud, negligent misrepresentation, and fraud in the inducement counterclaims based on any alleged statements by Salina Pham.

### 2.    Consequential and Punitive Damages

Defendants seek consequential and punitive damages. *See* Defs.' First Am. Orig. Answer, Countercl. & Jury Demand ¶¶53, 55 (Doc. 18). Yumilicious moves for summary judgment on its affirmative defense of waiver, arguing that Why Not waived its right to consequential and punitive damages by agreeing to a damages waiver provision in the Franchise Agreements, and the Individual Defendants are bound by the waiver under the Guaranty Agreements. Pl.'s Br. in Supp. of Mot. for Partial Summ. J. 18-19 (Doc. 37). In response, Defendants argue that the damages waiver provision does not apply to the Individual Defendants because: (i) Yumilicious has not alleged that any documents signed by the Individual Defendants contained a damages waiver and has not included any such documents in its summary judgment appendix; (ii) the damages waiver provision is not conspicuous; and (3) the Individual Defendants are not parties to the Franchise Agreements. Resp. to Mot. for Partial Summ. J. ¶¶ 17-20 (Doc. 42). For the reasons that follow, the court concludes that Yumilicious is entitled to summary judgment on its affirmative defense that Why Not waived

the right to recover consequential and punitive damages, and that the Individual Defendants are bound by the waiver.

Section XIX.K of the Franchise Agreements contains the parties' agreement to waive punitive and consequential damages, and provides in relevant part:

### K.      WAIVER OF PUNITIVE DAMAGES.

**. . . FRANCHISOR, FRANCHISEE, AND FRANCHISEE'S PRINCIPALS WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY PUNITIVE DAMAGES OR EXEMPLARY DAMAGES AGAINST THE OTHER AND AGREE THAT, IN THE EVENT OF A DISPUTE BETWEEN FRANCHISOR AND FRANCHISEE, THE PARTY MAKING A CLAIM WILL BE LIMITED TO EQUITABLE RELIEF AND TO RECOVERY OF ANY ACTUAL DAMAGES IT SUSTAINS.**

Pl.'s App. 76 (Ex. B, Columbia Franchise Agreement § XIX.K) (original typeface); *id.* at 149 (Ex. D, Lexington Franchise Agreement § XIX.K)  (original typeface).  The Franchise Agreement is executed by Kelly Glynn, a principal of Why Not, who also signed the Guaranty Agreements.

Under the Guaranty Agreements, the Individual Defendants personally guaranteed Why Not's obligations under the Franchise Agreements.  *Id.* at 30-31 (Ex. A, Depo. of Kelly Glynn at 211:17 - 212:1); *id.* at 101-03 (Ex. C, Depo. of Bryan Glynn at 152:4 - 155:2); *id.* at 173-74 (Ex. E, Depo. of Matthew Barrie at 109:18 - 110:16).  The Guaranty Agreements additionally provide that: "*Each Guarantor* also makes all of the *covenants, representations, warranties and agreements* of the Principals set forth in the Franchise Agreement and is obligated to perform thereunder, including, without limitation[] . . . under *Section XIX.K.  Id.* at 83-84 (Ex. B, Columbia Franchise Agreement at Attachment A) (emphasis added); *id.* at 156-57 (Ex. D, Lexington Franchise Agreement at Attachment A) (emphasis added).  Section XIX.K., quoted above, is the damages waiver provision.

**Memorandum Opinion and Order - Page 16**

On this evidence and having considered the parties' briefing, the court concludes that Defendants have failed to raise a genuine dispute of material fact as to the enforceability of the damages waiver provision. Contrary to Defendants' assertion, the Franchise Agreements and Guaranty Agreements are contained in Yumilicious's summary judgment materials. *Id.* at 76, 83-84, 149, 156-57. Further, even assuming that Defendants are correct that a damages waiver provision is subject to the same requirements of conspicuousness as a general release of liability clause, the court rejects Defendants' contention that the damages waiver provision is not conspicuous and therefore void. As stated by the Texas Supreme Court, "'[w]hen a reasonable person against whom a clause is to operate ought to have noticed it, the clause is conspicuous. For example, language in capital headings [and] language in contrasting type or color . . . is conspicuous." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 511 (Tex. 1993). Here, the damages waiver provision has a heading in all capitals in bold, underlined typeface — **K.WAIVER OF PUNITIVE DAMAGES.** — and the text of the provision also appears in all capital letters in boldface type. *See* Pl.'s App. 76 (Ex. B, Columbia Franchise Agreement § XIX.K); *id.* at 149 (Ex. D, Lexington Franchise Agreement § XIX.K). The damages waiver provision also states in all capital letters and boldface type that it applies not only to Franchisee, but also the "Franchisee's Principals," Matt Barrie, Kelly Glynn, and Brian Glynn. Kelly Glynn, a principal and guarantor, signed both the Franchise Agreement and Personal Guaranty. The two-page Guaranty Agreement is attached as Exhibit A to each Franchise Agreement and draws the attention of its signatories to the damages waiver provision in the Franchise Agreement by specific section and subheading (XIX.K). *Id.* at 83-84 (Ex. B, Columbia Franchise Agreement at Attachment A); *id.* at 156-57 (Ex. D, Lexington Franchise Agreement at Attachment A). Further, the guarantors' agreements to obligate themselves

to Why Not's "covenants, representations, warranties and agreements," specifically including Section XIX.K (the damages waiver provision), appear on the same page and only twelve lines above the signature block in the Guaranty Agreements. *Id.* at 84, 157.

The court concludes as a matter of law that the combination of typeface and location, coupled with the fact that Why Not principal Kelly Glynn signed the Franchise Agreement and Personal Guaranty, is sufficient to satisfy the standard articulated in *Dresser*, *supra*. Otherwise stated, a "reasonable person" in the position of the Individual Defendants, as Franchisee's Principals, "ought to have noticed" the damages waiver provision, and noticed that, as personal guarantors of Why Not's obligations, they were bound by Why Not's consequential and punitive damages waiver at Section XIX.K of the Franchise Agreement. *See Dresser*, 853 S.W.2d at 511. Defendants offer no other argument or evidence supporting their position that the damages waiver provision is unenforceable. Because Yumilicious has conclusively established the applicability of the damages waiver provision, and its affirmative defense of waiver, and Defendants have failed to raise a genuine dispute of material fact as to the waiver's enforceability, the court will grant summary judgment in Yumilicious's favor on its affirmative defense that Defendants waived any entitlement to consequential and punitive damages.

### 3.    Attorney's Fees

Yumilicious argues that it is entitled to summary judgment on Defendants' request for attorney's fees. Pl.'s Br. in Supp. of Mot. for Partial Summ. J. 26 (Doc. 37) ("Here there is no statutory authority, contractual authorization or special circumstances that would authorize an award of attorney's fees to Why Not."). In response, Defendants contend that there is no evidence they

have waived attorney's fees.  Resp. to Mot. for Partial Summ. J. ¶ 5 (Doc. 42).  The court agrees with Yumilicious.

In a diversity case, state law controls whether attorney's fees are recoverable and reasonable. *See, e.g., Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Texas law permits an award of attorney's fees only if authorized by statute or contract. *See, e.g., Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009).   In this case, Defendants have failed to provide any statutory or contractual basis for an award of attorney's fees.  Accordingly, Yumilicious is entitled to judgment as a matter of law on Defendants' claim of entitlement to attorney's fees.

## IV.    Conclusion

### A.    Ruling on the Motions

For the reasons herein stated, the court **grants** Plaintiff Yumilicious's Motion for Partial Summary Judgment (Doc. 35), and **dismisses with prejudice** Why Not, L.L.C's, Matt Barrie's, Kelly Glynn's, and Brian Glynn's counterclaims for fraud, negligent misrepresentation, and fraudulent inducement (except insofar as the counterclaims are based on alleged misrepresentations or omissions in the Franchise Disclosure Document), consequential and punitive damages and attorney's fees.  Further, the court **denies as moot** Plaintiff Yumilicious's Motion for Partial Dismissal of Counterclaims under Rule 12(b)(6) and Pursuant to Court Order (Doc. 19), as the court's ruling on Yumilicious's Motion for Partial Summary Judgment moots all issues therein presented.

### B.     Court's *Sua Sponte* Motion

The sole claim remaining is Why Not, L.L.C's, Matt Barrie's, Kelly Glynn's, and Brian Glynn's counterclaim based on alleged misrepresentations and omissions in the Franchise Disclosure Document.   *See* Defs.' Am. Ans., Countercl. & Jury Demand ¶¶ 44-45 (Doc. 18).   While Yumilicious did not move for summary judgment on this counterclaim, the court's independent research indicates that these claims may be subject to dismissal.

The Federal Trade Commission ("FTC") has promulgated regulations titled "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," 16 C.F.R. § 436 (2013), commonly known as the "Franchise Rule."   *See generally* John Boudreau, et al., 62B Am. Jur. 2d Private Franchise Contracts § 26 (2d ed. 2014).   Before selling a franchise, the Franchise Rule requires a franchisor to provide a prospective franchisee with a detailed disclosure statement, also known as a franchise disclosure document, that contains certain prescribed information about the business opportunity being offered, including current financial condition and the track record of any other franchisee.   *Id.; see also* 16 C.F.R. §§ 436.2, 436.5.   The disclosure requirements in the Franchise Rule are "designed to protect prospective purchasers from the financial hardships that arise when they purchase franchises . . . without essential, reliable information about them." Boudreau, *supra*, ¶ 26.   The FTC can bring suit to enjoin a franchisor's failure to furnish a prospective franchisee with the specified information, but no private right of action is available to franchisees under these regulations.   *Id.*; *see also A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, __ F. Supp. 3d __, 2014 WL 4852095, at *2 (D.D.C. 2014) (no private right of action is available to franchisee for franchisor's failure to furnish required information under Franchise Rule) (collecting cases); *Robinson v. Wingate Inns Int'l, Inc.*, 2013 WL 6860723, at *2

(D.N.J. Dec. 20, 2013) ("It is well-settled that there in no private cause of action for violation of the FTC franchise disclosure rules.") (citations omitted); *Vino 100, LLC v. Smoke on the Water, LLC*, 864 F. Supp. 2d 269, 281 (E.D. Pa. 2012) (same).

In light of the foregoing, the court *sua sponte* raises this issue for summary judgment. Accordingly, the court **directs** Defendants to respond and file a brief to show cause why their remaining counterclaim alleging misrepresentations and omissions in the Franchise Disclosure Document (*see* Defs.' Am. Ans., Countercl. & Jury Demand ¶¶ 44-45 (Doc. 18)) should not be dismissed either for lack of a private right of action, or for failure to allege the counterclaim with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure.[9] This brief shall not exceed seven pages and must be filed on or before **May 4, 2015**. Yumilicious may file a reply not to exceed five pages on or before **May 11, 2015**.

All remaining pretrial deadlines are hereby suspended pending further notice from the court.

**It is so ordered** this 23rd day of April, 2015.

Sam A. Lindsay
United States District Judge

---

[9] While the court previously found that Defendants had satisfied Rule 9(b)'s heightened pleading requirement, the court's determination was limited to paragraphs six, and thirteen through twenty-two of Defendants' Original Answer, Counterclaim and Jury Demand (fraud and negligent misrepresentation allegations arising from statements made by Yumilicious's CEO Salina Pham), and the court did not consider whether allegations pertaining to misrepresentations and omissions in the Franchise Disclosure Document satisfied Rule 9(b)'s heightened pleading requirement. *See* Aug. 14, 2014 Mem. Op. and Order 9-10 (Doc. 17).

**Memorandum Opinion and Order - Page 21**