IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YUMILICIOUS FRANCHISE, L.L.C., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| V. | § | No. 3:13-cv-4841-L |
| | § | |
| MATTHEW BARRIE, KELLY GLYN, | § | |
| BRIAN GLYNN, and WHY NOT, L.L.C., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Yumilicious Franchise, L.L.C. has filed a Motion for Attorneys' Fees Pursuant to Fed. R. Civ. P. 54(d)(2), *see* Dkt. No. 58, which United States District Judge Sam A. Lindsay has referred to the undersigned magistrate judge for proposed findings and recommendation, *see* Dkt. No. 61. Defendants Matt Barrie, Kelly Glynn, Brian Glynn, and Why Not, L.L.C. filed objections to the motion for attorneys' fees, *see* Dkt. No. 65, and Plaintiff filed a reply, *see* Dkt. No. 67. The undersigned issues the following findings of fact, conclusions of law, and recommendation that the motion should be granted in part and Plaintiff should be awarded $145,221.00 in attorneys' fees.

**Background**

Plaintiff sued Defendants for breach of two franchise agreements. *See* Dkt. No. 1. Defendants asserted affirmative defenses and counterclaims, including fraud claims.

*See* Dkt. Nos. 5 & 18. The Court granted Plaintiff's motion for partial summary judgment [Dkt. No. 35] on its breach of contract and attorneys' fees claims and dismissed with prejudice all but one of Defendants' counterclaims, including its fraud claims. *See* Dkt. No. 48. The Court subsequently dismissed with prejudice Defendants' remaining counterclaim. *See* Dkt. No. 53. On May 18, 2015, the District Court entered judgment in Plaintiff's favor and ordered that, "[a]s the prevailing party, Yumilicious is entitled to costs and reasonable attorney's fees. The amount of attorney's fees shall be determined postjudgment pursuant to Federal Rule of Civil Procedure 54(d)." *See* Dkt. No. 54 at 2.

Plaintiff filed its Rule 54(d)(2) motion on June 1, 2015, seeking a post-judgment award of attorneys' fees under Texas Civil Practices and Remedies Code § 38.001(8) and the following language in the franchise agreements:

> N.    <u>Costs and Attorneys' Fees.</u> If Franchisor incurs expenses in connection with Franchisee's failure to pay when due amounts owed to the Franchisor ... or otherwise comply with this Agreement, Franchisee agrees to reimburse Franchisor for any of the costs and expenses which Franchisor incurs, including, without limitation, accounting, attorney's, arbitrators' and related fees.

Dkt. No. 60-1 at 3, 6. Defendants object to the amount of attorneys' fees sought by Plaintiff as being neither reasonable nor necessary.

## Legal Standard

Federal Rule of Civil Procedure 54(d)(2) provides the Court discretionary authority to award attorneys' fees and non-taxable costs. *See* FED. R. CIV. P. 54(d)(2). The award of attorneys' fees in a diversity case is governed by state law. *See Structural*

2

*Metals, Inc. v. S & C Elec.* Co., 590 F. App'x 298, 304 (5th Cir. 2014) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). Therefore, because this Court's jurisdiction was premised on complete diversity of citizenship, the court will look to Texas state law in determining the merits of the fee request. *See Mathis*, 302 F.3d at 461.

"'Texas follows the American Rule, which provides that there can be no recovery of attorney's fees unless authorized by contract or statute.'" *Structural Metals, Inc.*, 590 F. App'x at 304 (quoting *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)). Despite that general rule, Texas law specifically provides for the recovery of attorney's fees in breach of contract cases. *See id.*; TEX. CIV. PRAC. & REM. CODE § 38.001(8). "Although courts should consider several factors when awarding attorneys' fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

The United States Court of Appeals for the Fifth Circuit has noted that "[i]t is unclear whether the lodestar method is the correct method for calculating attorney's fees under section 38.001." *Structural Metals, Inc.*, 590 F. App'x at 308 n.6 (comparing cases). The Fifth Circuit then held that a district court does not abuse its discretion by applying the lodestar method when neither party disputes its use. *See id.* at 308. Here, because both Plaintiff and Defendants in this case argue that the attorneys' fees request should be evaluated under the lodestar method, the undersigned will apply it.

The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended. There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800.

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989); *see also Arther Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b)) (same). Under both Fifth Circuit and Texas law, those factors are (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of

the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Johnson*, 488 F.2d at 717-19; *Arthur Anderson*, 945 S.W.2d at 818. But the fee applicant is not required to present evidence on all of the factors. *See Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App. – Houston [14th Dist.] 2012, no pet.). "The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Id.*

The undersigned recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, has recently been called into question. *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013). But in a recent opinion, the United States Court of Appeals for the Fifth Circuit, without comment or reference to the United States Supreme Court's decision in *Perdue*, continued to utilize the approach laid out by this Court. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502-03 (5th Cir. 2013). *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012)

(analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*).

In *Perdue*, the Supreme Court was ultimately considering the appropriateness of an enhancement of an award of attorneys' fees, and Plaintiff here has not requested such an enhancement. Other factors also distinguish this case from *Perdue*, including the fact that *Perdue* involved a 42 U.S.C. § 1988 claim and the fees were therefore paid by state and local taxpayers. *See Perdue*, 559 U.S. at 558. Moreover, after the lodestar amount is determined, it may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar, *see Saizen*, 448 F.3d at 800, and the lodestar calculation may take into account several *Johnson* factors, *see Black*, 732 F.3d at 503 n.8.

In light of the circumstances in this case – where there is no request for enhancement and no Section 1988 claim – the undersigned will not address whether *Perdue* changed the landscape of calculating attorneys' fees awards in the Fifth Circuit. Rather, the Court should take into account the necessary factors when determining the appropriate amount of attorneys' fees.

## Analysis

Plaintiff is represented by Todd Donohue and Lauren Lockett of The Wolf Law Firm, P.C. and was previously represented by William K. Woods, Aaron Davidson, and Christopher Norfleet of the law firm of Baker Botts, L.L.P. Plaintiff seeks a total of

$166,542.44 in attorneys' fees for work done by the two law firms.

Plaintiff seeks attorneys' fees for work performed by The Wolf Law Firm, P.C., which Plaintiff reports to be 408.7 hours of work by Todd C. Donohue at a $275.00 hourly billing rate ($112,392.50) and 32.4 hours of work by Lauren Lockett at a $215.00 hourly billing rate ($6,966.00). Mr. Donohue is a former Baker & Botts, L.L.P. attorney and has over 14 years of litigation experience. Ms. Lockett has over 13 years of litigation experience. But Plaintiff does not seek to recover $4,510.00 of the fees billed by Todd Donohue for time spent on the transition of the case from Baker Botts, L.L.P. to The Wolf Law Firm, work on a potential amended complaint that was not filed, and advice related to a future franchise disclosure document. Plaintiff therefore seeks a total award of $114,848.50 for attorneys' fees incurred by The Wolf Law Firm, P.C.

Plaintiff also seeks attorneys fees for work performed by Baker & Botts, L.L.C. as follows: for work done by William K. Woods, 7.7 hours at a hourly billing rate of $650.00 ($5,005.00) and 7.5 hours at a hourly billing rate of $596.88 hours ($4,476.60); for work done by Aaron Davidson, 1.4 hours at a hourly billing rate of $650 per hour ($910.00), 12.30 hours at a hourly billing rate of $596.88 ($7,341.62), 2.9 hours at a hourly billing rate of $700.00 ($2,030.00), and 3.3 hours of work at a hourly billing rate of $678.79 ($2,240.01); and for work done by Christopher Norfleet, .5 hours at a hourly billing rate of $450 ($225.00), 8.2 hours of work at a hourly billing rate of $413.22 ($3,388.40), 17.20 hours at a hourly billing rate of $475.00 ($8170.00), and 38.6 hours at a hourly billing rate of $463.92 ($17,907.31). Mr. Woods is a partner with over 15

years of experience and expertise in franchise law. Mr. Davidson is a partner with over 15 years of experience and expertise in commercial litigation. Mr. Norfleet is an associate with over 4 years of experience. Plaintiff seeks a total award of $51,693.94 for attorneys' fees incurred by Baker & Botts, L.L.C.

The fee application is supported by the Affidavit of Jeffrey J. Wolf of The Wolf Law Firm, P.C. and redacted billing statements from both law firms. *See* Dkt. No. 60-2. Mr. Wolf declares that he is an experienced attorney who has tried more than fifty significant cases to verdict. He declares that the work for which Plaintiff seeks attorneys' fees was reasonably related to commercial litigation of this nature and included factual investigation; settlement efforts; two mediations; preparing for and taking three depositions; preparing for and defending three depositions; preparing and responding to written discovery requests; briefing, strategy, and research associated with two motions to dismiss, Defendants' motion for reconsideration, Plaintiff's motion for partial summary judgment, and the Court's *sua sponte* motion; review of relevant franchise agreements, franchise disclosure documents, and correspondence related to the dispute at the center of his lawsuit; telephone conferences, correspondence, and meetings with Plaintiff to advise Plaintiff, inform Plaintiff of the status of the case, and make litigation-related decisions; preparing the complaint and answers to counterclaims; conducting legal research; corresponding with Defendants' counsel regarding written discovery, settlement, and extension of deadlines; analyzing Defendants' responses to initial disclosures and written discovery; analyzing the Court's rulings and communicating and explaining their legal significance to Plaintiff;

8

preparing a bill of costs; briefing, strategy and research associated with the motion for attorneys' fees; and research regarding post-judgment deadlines for motions and appeals. Mr. Wolf also declares that the time and labor required was reasonable given the amount of briefing created by Defendants' multiple motions regarding the same arguments and Defendants' lack of clarity in their briefing and that experienced commercial lawyers were needed to adequately represent Plaintiff. And Mr. Wolf declares that the rates charged by Plaintiff's attorneys in this case are consistent with the *Texas Lawyer*'s annual survey and that the rates charged by The Wolf Law Firm are below the typical rates charged for this type of work.

Defendants object to the amount of attorneys' fees sought by Plaintiff, and their objections are supported by the Affidavit of Gary E. Smith, which is incorporated by reference in the objection. *See* Dkt. Nos. 65 & 66. First, Defendants argue that an attorneys' fees award of $166,542.44 is *per se* unreasonable and unnecessary for collection of an uncontested claim of $59,688.50. Mr. Smith declares "that at no time was there a serious contention by Defendants that they did not owe Plaintiff the sum demanded." Therefore, Mr. Smith opines that Plaintiff should have filed a preliminary motion for judgment on the pleadings, *see* FED. R. CIV. P. 12(c), or a motion for summary judgment, *see* FED. R. CIV. P. 56, on its liquidated contract claim, then moved to sever and seek final judgment on that claim, *see* FED. R. CIV. P. 54(d). If Plaintiff had followed that litigation strategy, Mr. Smith opines, Plaintiff's reasonable and necessary attorneys' fees should not exceed half of the claim, or $30,000. Instead, Mr. Smith

opines that Plaintiff incurred unreasonable amounts of attorneys' fees defending Defendants' affirmative defenses and counterclaims so they could now seek to recover excessive attorneys' fees.

But, contrary to Mr. Smith's assertion, Defendants contested Plaintiff's breach-of-contract claim. *See* Dkt. Nos. 5 & 18. And Defendants' argument ignores the impact of their affirmative defenses and counterclaims. "To prevail on a contract claim a party must overcome any and all affirmative defenses ... and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.2d 299, 314 (Tex. 2006). By the same token, when a defendant asserts a counterclaim that the defendant must overcome in order to fully recover on its contract claim, the attorneys' fees necessary to defeat that counterclaim are likewise recoverable. *See Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007).

Plaintiff incurred attorneys' fees defending Defendants' counterclaims, which were styled as affirmative defenses in both the original and amended answers, and was required to overcome those affirmative defenses to prevail on its breach-of-contract claim. Thus, those attorneys' fees are recoverable.

One consideration in determining the hours reasonably expended is whether the hours claimed yield a fee that is excessive compared to the amount at stake or owed. *See TransAmerica Inv. Group, Inc. v. Hamilton*, Civil Action No. H-12-1102, 2014 WL 3867687, at *2 (S.D. Tex. Aug. 6, 2014) (citing *Sibley v. RMA Partners, L.P.*, 138 S.W.3d 455, 459 (Tex. App. – Beaumont 2004, no pet.)). "Texas law, however, does not

10

require precise proportionality between the fees awarded and the amount of recover or the original amount in controversy." *Id.* (listing Texas cases). In this case, the disproportion between the amounts due under the franchise agreements and the amount of attorneys' fees sought is attributable to Plaintiff's defense of Defendants' affirmative defenses and counterclaims. Thus, the amount of attorneys' fees sought by Plaintiff is not *per se* unreasonable or unnecessary.

Defendants also assert specific objections to Plaintiff's attorneys' billing statements. Defendants assert that the majority of the work reflected in The Wolf Law Firm, P.C. billing statements is in defense of the counterclaims and affirmative defenses. Defendants assert that the Baker & Botts, L.L.P. billing statements are not precise enough and that some of the work was not related to the litigation, including all work prior to filing the original complaint with the exception of drafting the complaint, and all work related to the affirmative defenses and counterclaims, as well as all work on a related state court case alleging the counterclaims.

Defendants object that the Baker & Botts, L.L.P.'s billing statements "are not precise and detailed enough to determine what action, if any, relates to" this lawsuit because portions of those statements were redacted to protect attorney-client privileged and work-product protected information. The redactions generally identify the subject of legal research or telephone calls with the client, which are litigation-related matters.

Defendants also may be complaining that Baker & Botts, L.L.P.'s attorneys used block billing, making it is impossible to determine the exact amount of time spent on the breach of contract claim, affirmative defenses and counterclaims, and a related

11

lawsuit. The term "block billing" refers to the time-keeping method by which each lawyer enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *See Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-cv-913-D, 2005 WL 6789456, at *3 (N.D. Tex. Dec. 20, 2005). Block billing makes it difficult to determine the precise number of hours that should be reduced in each time entry due to vague descriptions. *See id.* at *4. Because Plaintiff may recover attorneys' fees for defending against Defendants' affirmative defenses and counterclaims, the block billing is not vague simply because it does not distinguish the time devoted to those claims.

But the block billing here does makes it impossible to determine how much time was devoted to activities directly related to this lawsuit and those devoted to a related lawsuit. According to Defendants, they filed a state court case on their counterclaims before Plaintiff filed this breach of contract case, and work done on one is not related to work done on the other.

Based on the Court's review of Baker & Botts, L.L.P.'s billing statements, time entries in December 2013 and January 2014 mention both a state court case and a federal court case. The entries for work done on both lawsuits consist of two entries by Aaron Davidson for 1.2 hours and .5 hours for a total of 1.7 hours and five entries by Christopher Norfleet for 5.0 hours, .2 hours, 1.4 hours, .8 hours, and .2 hours for a total of 7.6 hours. The undersigned concludes that the hours worked by Mr. Davison and Mr. Norfleet during this time period should be reduced by one-half, to 0.85 hours for Mr. Davidson and 3.8 hours for Mr. Davidson, because it is unclear whether the work done

related to the state court lawsuit is also related to this litigation.

Defendants also argue that Plaintiff cannot recover attorneys' fees for work done prior to the filing of the complaint on December 12, 2013, other than for preparation of the complaint. The attorney work done by Baker & Botts, L.L.P. prior to the filing of the complaint refer to "South Carolina" issues, which refer to the two franchise agreements in South Carolina on which this lawsuit is based, and reflects communications with Plaintiff, demand letters and default notices, analysis of the franchise agreements, including mediation provisions, and preparation for and participation in mediation. The undersigned concludes that all of these matters are related to this litigation and are recoverable.

Defendants also generally assert that the Baker & Botts, L.L.P. billing statements contain double billing, without identifying the objectionable entries. The billing statements reflect a few instances in which more than one attorney is working on some aspect of a preparing or reviewing a document, but those billings are not duplicative.

Turning to the *Johnson* and *Arthur Anderson* factors, the time and labor required was reasonable, and the case precluded other work by The Wolf Law Firm. The Court finds that the prevailing rate in Dallas County for attorneys with the experience, skill, and ability of Defendants' attorneys and paralegal is, if anything, higher than the rates and fees charged by The Wolf Law Firm. The Court finds, based on the information and record before the Court, including the Affidavit of Jeffrey J. Wolf, that the requested hourly rates in this case for Todd Donohue and Lauren

Lockett are reasonable and are within the market rate for attorneys and paralegals handling this type of litigation in the Dallas area. *See generally Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees). The undersigned finds that the amount of attorneys' fees sought for work by Todd Donohue and Lauren should not be decreased or enhanced under the lodestar factors.

But, as to the requested hourly rates for William K. Woods and Aaron Davidson, the Court recently found in two case, including a copyright action, $400 per hour to be appropriate for a lawyer of similar experience to Mr. Wood and Mr. Davidson, and the Court likewise finds that to be the appropriate rate at which to reimburse these attorneys' time, as the prevailing market rate in this legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *See Siragusa v. Arnold*, No. 3:12-cv-4497-M, 2015 WL 518270, at *8 (N.D. Tex. Feb. 9, 2015); *SortiumUSA, LLC v. Hunger*, No. 3:11cv-1656-M, 2015 WL 179025 (N.D. Tex. Jan. 14, 2015). And Judge Lindsay recently explained that "the normal and customary rate for a four-five year attorney in the Dallas legal market ... is $225-275 per hour." *Parks v. Commercial Recovery Sys., Inc.*, No. 3:12-cv-2742-L, 2014 WL 521501, at *1 (N.D. Tex. Feb. 7, 2014). The Court believes that that is the correct range for such a lawyer in the Dallas market and that $275 is the appropriate rate at which to award fees for work performed by Christopher Norfleet, as the prevailing market rate in this legal community for similar services by lawyers of reasonably comparable skills,

experience, and reputation. Accounting for these reductions in the hourly rates requested by Plaintiff results in a reduction of $21,321.44 from the $51,693.94 for fees that Plaintiff seeks for these attorneys' work. Specifically, factoring in the reduction in hours for block billing, as explained above, Plaintiff should be awarded fees for the work by William K. Woods over 15.2 hours at a hourly billing rate of $400 ($6,080.00), by Aaron Davidson over 19.0 hours (19.9 - 0.85) at a hourly billing rate of $400 ($7,600.00), and by Christopher Norfleet over worked 60.7 hours (64.5 - 3.8) at a hourly billing rate of $275 ($16,692.50), for a total of $30,372.50 in fees for work by these attorneys.

For all of these reasons, the undersigned recommends that the Court award Plaintiff $145,221.00 in attorneys' fees, representing $114,848.50 in fees by The Wolf Law Firm and $30,372.50 ($51,693.94 - $21,321.44) in fees by Baker & Botts, L.L.P.

## Recommendation

Yumilicious's Motion for Attorneys' Fees Pursuant to Fed. R. Civ. P. 54(d)(2) [Dkt. No. 58] should be granted in part and Defendants Matthew Barrie, Kelly Glynn, Brian Glynn, and Why Not, L.L.C. should be ordered to pay Plaintiff $145,221.00 in reasonable and necessary attorneys' fees.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 21, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE